UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO TRUST BANK, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>BANCINSURE, INC., an Oklahoma corporation; CONTINENTAL CASUALTY COMPANY, an Illinois corporations,<br><br>Defendant. | Case No. 1:12-CV-032-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant Continental Casualty Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 20). For the reasons discussed below, this motion is denied.

### INTRODUCTION

Plaintiff Idaho Trust Bank ("Idaho Trust") has filed a complaint against Defendants Continental Casualty Company ("CNA") and BancInsure, Inc. ("BancInsure") alleging that both Defendants failed to fully indemnify and defend Idaho Trust from claims brought by Inland Storage, Inc. ("Inland Storage") and James Hutchens ("Hutchens") related to Idaho Trust's alleged breach of a settlement agreement by wrongfully refusing to extend credit to Hutchens in 2010 ("2010 Dispute"). The complaint was initially filed in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada on December 23, 2011 (Dkt 1-1). BancInsure removed this matter to this Court on January 24, 2012 (Dkt. 1).

**MEMORANDUM DECISION AND ORDER - 1**

BACKGROUND

1. **Inland Storage Dispute**

On August 3, 2009, Inland Storage filed a third-party complaint against Idaho Trust over its refusal to extend financing that it had allegedly promised for Inland Storage's planned construction of an RV and Boat Storage Facility in San Antonio, Texas in 2008. (Compl., Dkt. 1-1, ¶¶ 13-14.) On or about February 25, 2010, Inland Storage entered into a settlement agreement ("Settlement") with Idaho Trust. Included in the Settlement were terms for loans to Hutchens and Inland Storage that, if completed, would result in the mutual release of claims between Idaho Trust and Inland Storage. (*Id*. ¶ 19). A dispute arose regarding the funding of a loan for Inland Storage to purchase the steel for the Proposed RV Storage Facility. (*Id*.) As a result, Inland Storage filed a second amended third-party complaint on July 27, 2010 to add claims, alleging a breach of the Settlement by failing to extend the 2010 steel loan. (*Id*.)

On November 2, 2010, the Ada County District Court entered an order granting Idaho Trust summary judgment on Counts 1-4 of the Second Amended Third-Party Complaint, including Inland Storage's claims for Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, Estoppel and Detrimental Reliance. Each of the dismissed claims related to Idaho Trust's alleged breach of its commitment to finance the proposed RV Storage Facility in 2008. The court did not grant summary judgment on Inland Trust's claims that Idaho Trust breached the 2010 Settlement by failing to make the steel loan, finding there were genuine issues of material fact. (*Id*. ¶ 20; Reply, Ex. 3, Dkt 30-1.)

2. **Allegations against Defendants**

Idaho Trust's Complaint alleges that both CNA and BancInsure failed to defend and fully

indemnify it from claims brought by Inland Storage. (Compl. ¶¶ 31-55). Idaho Trust had a liability insurance policy with BancInsure for the policy period August 30, 2008 through August 30, 2010 and a liability insurance policy with CNA for the policy period August 30, 2009 through September 30, 2011. (*Id.* at ¶¶ 2-3).

In 2009, Idaho Trust tendered the defense of the Inland Storage litigation to BancInsure (*Id*. ¶¶ 2-4). On December 28, 2009, BancInsure accepted the tender and defended Idaho Trust from the claims related to the 2008 refusal to finance. (*Id*. at ¶ 18). However, after Idaho Trust notified BancInsure that it obtained partial summary judgment on the 2008 refusal to finance claims, BancInsure notified Idaho Trust on November 11, 2010, that it was no longer providing coverage for the Inland Storage litigation. (*Id*. at ¶ 21).

Idaho Trust also provided notice and tendered a claim to CNA pursuant to that policy. In a letter dated February 9, 2011, CNA informed Idaho Trust that it was denying coverage for Idaho Trust's claim. (*Id*. at ¶ 29).

3.  **CNA Policy**

CNA issued a "Miscellaneous Professional Liability Policy" number 287426661 to Idaho Trust for a policy period of August 30, 2009 through September 30, 2011 ("CNA policy"). (Compl. ¶ 24.) Under this provision, CNA agreed to "pay on behalf of [Idaho Trust] . . . all Loss resulting from any Claim first made against [Idaho Trust], during the Policy Period . . . for a Wrongful Act by [Idaho Trust] . . . provided that such Wrongful Act was committed on or subsequent to the Retroactive Date." (Motion to Dismiss, Dkt. 20-1, Ex. 1 at 35). Loss is defined as "damages, settlements, judgments . . . and Defense Costs for which [Idaho Trust] is legally obligated to pay on account of a covered Claim." (*Id*.) A "Claim" is defined as "a

**MEMORANDUM DECISION AND ORDER - 3**

written demand by a Borrower, received by [Idaho Trust] for monetary damages or non-monetary relief arising out of a Wrongful Act, in the performance of Professional Services." (*Id*. at 44.) Wrongful Act is defined as "any actual or alleged error, misleading statement, act, omission, neglect, or breach of duty committed or attempted by [Idaho Trust] in its performance of Professional Services." (*Id*. at 36.)

Other pertinent definitions include "Professional Services" which includes "Lender Services" defined as "those services performed by or on behalf of [Idaho Trust] for a third party client of [Idaho Trust] pursuant to a written contract with such client for consideration inuring to the benefit of [Idaho Trust], including, without limitation, any Lending act." (*Id*. at 44.) A "Lending Act" means "a Wrongful act of [Idaho Trust] relating to an extension of credit, a refusal to extend credit or an agreement to extend credit to a Borrower." (*Id*.) Borrower is "any person or entity unaffiliated with [Idaho Trust] and to which an extension of credit or an agreement to extend credit was made or negotiated, or to which a refusal to extend credit was made." (*Id*.)

The CNA policy also provides for certain exclusions that are applicable to all Loss. (*Id*. at 36.) The parties are in disagreement over three of these exclusions. First is the "Prior and Pending Date" exclusion, which provides:

> [CNA] shall not be liable to pay any loss under this Coverage Part in connection with any Claim made against [Idaho Trust] . . . based upon, directly or indirectly arising out of, in any way involving or constituting any civil . . . proceeding . . . against [Idaho Trust]:
> (1)   pending prior to or on the Prior or Pending Date set forth in the Coverage Schedule of the Declarations [August 30, 2009]; or
> (2)   which has been the subject of any notice given under any prior policy, regardless whether such prior policy affords coverage for such proceeding,

**MEMORANDUM DECISION AND ORDER - 4**

>>investigation, or arbitration;
> or any fact, circumstance, situation, transaction underlying or
> alleged in such proceeding, investigation or arbitration.

(*Id.* at 36.)

Second is the "Interrelated Wrongful Acts Exclusion," which reads:

> [CNA] shall not be liable to pay any loss under this Coverage Part in connection with any Claim made against [Idaho Trust]: . . . based upon, directly or indirectly arising out of, or in any way involving:
> (1) any Wrongful Act or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy, in whole or in part; or
> (2) any other Wrongful Act whenever occuring, which, together with a Wrongful Act described in (1) above, would constitute Interrelated Wrongful Acts[.]

(*Id*. at 36). Interrelated Wrongful Acts are, in turn, defined as "any Wrongful Acts which are logically or casually connected by reason of any common fact, circumstance, situation, transaction or event." (*Id*. at 9).

Lastly, the "Contracts Exclusion" states: "[CNA] shall not be liable to pay any loss under this Coverage Part in connection with any Claim made against [Idaho Trust]: . . . for any of: [Idaho Trust's] actual or alleged liability under any oral or written contract or agreement, including but not limited to express warranties or guarantees . . . except that coverage otherwise available to [Idaho Trust] shall apply to such . . . liability that exists in the absence of such contract or agreement[.]" (*Id*. at 36-37.)

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's claim for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of

**MEMORANDUM DECISION AND ORDER - 5**

Civil Procedure 8(a), which sets forth the minimum pleading requirement, i.e., that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 565 U.S. 662, 678-79 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the non-moving party, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 565 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual allegations to provide plausible grounds for entitlement to relief. *Twombly*, 550 U.S. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 565 U.S. at 678.

The Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 6**

2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)).

CNA has attached three documents to its pleadings on this motion, the CNA policy (Ex. 1, Dkt. 20-2), the second amended third-party complaint in the underlying Inland Storage litigation (Ex. 2, Dkt. 20-3), and a decision from the state district court in the Inland Storage litigation (Ex. 3, Dkt. 30-1). The consideration of these documents has not been challenged by Idaho Trust and they fall within the ambit of documents that may be considered on a Rule 12(b)(6) motion without converting the motion into one for summary judgment.

## DISCUSSION

### 1.   The Duty to Defend and Indemnify

Insurance policies are contracts of adhesion, not typically subject to negotiation between the parties, and any ambiguities must be construed strongly against the insurer. *Clark v. Prudential Prop. & Cas. Ins. Co.*, 538, P.3d 242, 245 (Idaho 2003). In the claims at issue here, Idaho Trust seeks declaratory judgments on CNA's duties to indemnify and defend, and contends that CNA breached its contract duty to indemnify Idaho Trust.

As a general rule, an insurer must defend a suit against the insured where the complaint alleges facts which, if true, would bring the case within the policy coverage. *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440, 445 (Idaho Ct. App. 1984). The allegations in the complaint are not to be read narrowly but rather the court must look at the full breadth of the plaintiff's claim. *Id*. at 446. "'The pleadings are malleable, changeable and amendable . . .'" *Id*. (quoting *Standard Oil Co. of Calif. v. Hawaiian Ins. & Guar. Co., Ltd.*, 634 P.2d 123, 129 (Haw. 1981)). "An insurer's 'duty to defend arises upon the filing of a complaint whose allegations, in

**MEMORANDUM DECISION AND ORDER - 7**

whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy.'" *County of Boise v. Idaho Counties Risk Mgmt. Program, Underwriters*, 265 P.3d 514, 517 (Idaho 2011) (quoting *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1260-61 (Idaho 2002)).  A duty to defend exists if there is a "genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts."  *Black v. Fireman's Fund Am. Ins. Co.*, 767 P.2d 824, 830 (Idaho Ct. App. 1989).

The duty to indemnify is triggered if the policy covers an insured's costs or damages. *Deluna v. State Farm Fire & Cas. Co.*, 233 P.3d 12, 16 (Idaho 2008).  Because the duty to defend is broader than the duty to indemnify, "where there is no duty to defend, there can be no duty to indemnify."  *Hoyle*, 48 P.3d at 1264.

CNA argues that Idaho Trust's three claims against it all fail for the same reason--the CNA policy does not provide coverage.  CNA posits five separate reasons to explain its position. First, coverage is excluded under the "Prior or Pending Exclusion" because the litigation was pending prior to the policy's August 30, 2009 "Prior or Pending Date."  Second, under the same exclusion, coverage is excluded because Idaho Trust provided notice of the claim under its BancInsure policy.  Third, coverage is excluded under the "Interrelated Wrongful Acts Exclusion."  Fourth, coverage is excluded under the "Contracts Exclusion."  Fifth, no coverage exists under the CNA Policy because the agreement to provide the steel loan occurred before the CNA Policy's Retroactive Date.

2.      **Prior or Pending Exclusion**

CNA contends that the breach of settlement claims in the Inland Storage litigation arise directly out of and involve the original civil proceeding brought by Hutchens and Inland Storage

**MEMORANDUM DECISION AND ORDER - 8**

against Idaho Trust. CNA argues it is immaterial that Hutchens amended his complaint on July 27, 2010, after the policy's "Prior or Pending Date" because the settlement agreement claims are "based upon," "aris[e] out of," and "involv[e]" the same course of dealing in Hutchens' original "civil . . . proceeding" against Idaho Trust that was pending prior to August 30, 2009.

In drawing all inferences in favor of Idaho Trust, the non-moving party, the Court concludes that the underlying claim that Idaho Trust seeks to cover would not fall within this exclusion as a matter of law. That is, the underlying claim for breach of settlement agreement by changing the terms of the 2010 steel loan does not clearly "arise out of" or "involve" the same actions leading to Hutchens' original lawsuit against Idaho Trust. Further, the decision from the state court found that it was a release agreement signed in 2008 that barred all the claims arising from the 2008 refusal to finance, lending support to the idea that the 2010 Settlement was a separate lending act. Under *Iqbal*'s plausibility standard and when construing the allegations in favor of Idaho Trust, the Court finds the 2010 claims, as pleaded, do not necessarily "arise out of" or "involve" the 2008 refusal to finance that would cause them to be barred under this exclusion.

CNA also submits that under this same exclusion, coverage is excluded because Idaho Trust provided notice of the claim to BancInsure under the prior BancInsure policy. According to the Complaint, Idaho Trust notified BancInsure of the Inland Storage Litigation and tendered the claim to BancInsure for the defense and notified BancInsure that the state court dismissed all claims in Hutchens' second amended third-party complaint, except the claim for breaching the 2010 Settlement. (*See* Compl. ¶¶ 4, 19-21.)

Under this exclusion, CNA's argument would not allow Idaho Trust to provide notice to

**MEMORANDUM DECISION AND ORDER - 9**

more than one insurer when a claim is potentially covered under two different policies. When there is a potential dispute over when a claim arose, an insured must be able to provide notice to both insurance companies. To enforce otherwise would prevent an insured from raising claims against two different insurance companies that may each have a duty to defend some or all of some particular claim or claims, and reduce the benefit of obtaining insurance for the insured to a shell game that can only be played to its peril.

3.    **Interrelated Wrongful Acts Exclusion**

CNA additionally argues that coverage is excluded under the policy's Interrelated Wrongful Acts Exclusion because Idaho Trust provided notice under the prior BancInsure policy for the claims arising out of the 2008 refusal to finance and Idaho Trust's alleged breach of the Settlement constitutes an "interrelated wrongful act" under the CNA Policy. CNA states the breach of the Settlement is an interrelated wrongful act because it is "logically" and "causally" connected to Plaintiff's initial wrongful lending act by reason of a "common fact, circumstance, situation, transaction or event;" that is, the ordering of steel from Forge Building Company based on Idaho Trust's promise that it would provide financing.

Again, when accepting the factual statements of the complaint as true and when drawing inferences in favor of Idaho Trust, the non-moving party, the Court concludes that the 2010 dispute could be a distinct event based on a separate lending act, not related to the alleged wrongful lending act in 2008. As noted above, the state district court found it was a release signed in 2008 that barred the claims arising from the 2008 lending activities. Further, it is plausible that such facts can be proven at trial.

**MEMORANDUM DECISION AND ORDER - 10**

**4.     Contract Exclusion**

CNA contends that the Settlement is a contract and the "Contracts Exclusion" expressly excludes coverage for Idaho Trust's "actual or alleged liability under any oral or written contract or agreement[.]" (Ex. 1 at 36).  The second amended third-party complaint brings two causes of action regarding the Settlement: breach of contract and breach of the implied covenant of good faith and fair dealing, a cause of action that sounds in contract.  (Ex. 2 at 10-11).  *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc., et al.*, 824 P.2d 841, 863-64 (Idaho 1991) (discussing several Idaho cases holding the implied covenant of good faith and fair dealing sounds in contract, not tort).

First, Idaho Trust points out that because the policy itself describes the use of contracts under "Lender Services," the exclusion is ambiguous and should be construed narrowly.  Idaho Trust maintains that the conduct that led to the 2010 claims fall squarely within the definition of "Lending Act," that is a "a Wrongful Act . . . relating to an extension of credit, a refusal to extend credit or an agreement to extend credit to a Borrower."  (*See* Ex. 1 at 44.)

The Court agrees with Idaho Trust that CNA cannot define Lender Services as services performed "pursuant to a written contract" and then exclude claims that arise under contracts.  If the exclusion was applied as CNA suggests, then any lending act done pursuant to a written agreement would not be covered which would potentially frustrate the entire purpose of the policy, which is to provide coverage.  To define Lending Act as an act that can be done pursuant to contract and then exclude claims based on contracts creates an ambiguity in the policy that must be construed narrowly.

**MEMORANDUM DECISION AND ORDER - 11**

### 5. Retroactive Date

Lastly, CNA argues that because the alleged wrongful act occurred prior to the CNA Policy's retroactive date [August 30, 2009], no coverage exists.  Under the CNA policy, CNA shall pay for all loss resulting from any claim for Plaintiff's "Wrongful Act" provided that "such Wrongful Act was committed on or subsequent to the [August 30, 2009] Retroactive Date."  (Ex. 1 at 7, 35.)

This argument goes hand-in-hand with CNA's earlier arguments that the 2010 dispute "arises out of" or is an "interrelated act" to the 2008 refusal to finance.  As the Court has stated above, in accepting the factual allegations as true and construing inferences from the allegations in favor of Idaho Trust, the 2010 dispute could be a separate and distinct lending act that occurred subsequent to the Retroactive Date and would not be barred under the policy.

### CONCLUSION

At this stage in the proceedings the Court finds that Idaho Trust is entitled to proceed. The allegations in the complaint satisfy the Rule 12(b)(6) standard and the Court is not satisfied on this record that any of relied upon exclusions bar coverage.

### ORDER

**IT IS HEREBY ORDERED that** CNA's Motion to Dismiss (Dkt. 20) is **DENIED.**

DATED:  **August 31, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**