UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO TRUST BANK,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>BANCINSURE, INC., an Oklahoma corporation; CONTINENTAL CASUALTY COMPANY, an Illinois corporation,<br><br>　　　　　　　Defendants. | Case No. 1:12-cv-00032-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: BANCINSURE'S MOTION FOR STAY (DKT. 152)** |

On August 6, 2014, Defendant BancInsure filed a "Notice of Appointment of Receiver and Issuance of Stay by Oklahoma Courts, and Ex Parte Motion for Entry of a Temporary Stay of This Action." (Dkt. 152.) The Motion is not being treated, either by the Court or the parties, as an "ex-parte" motion at this juncture. For the reasons described in this decision, the Court grants the Motion for Temporary Stay.

### FACTS AND PROCEDURAL BACKGROUND

On January 24, 2012, Defendant BancInsure removed this case from state court to this Court, on the basis of diversity jurisdiction. (Dkt. 1.) The Complaint brought by Plaintiff Idaho Trust contained breach of contract and declaratory relief claims against two insurers –

**MEMORANDUM DECISION AND ORDER - 1**

BancInsure and Continental Casualty Company (CNA). Idaho Trust alleged that both Defendants failed to fully indemnify and defend Idaho Trust in a layer of underlying litigation. CNA and Idaho Trust settled out of court. (Dkt. 81.) On March 20, 2014, the Court issued an order entering partial summary judgment in favor of Idaho Trust on its claim against BancInsure (Dkt. 132), holding that the BancInsure Policy provided coverage for the underlying claims. The amount owed, however, was in factual dispute for various reasons that required a trial to resolve. A four-day jury trial is set to begin on September 2, 2014 (Dkt. 139).

On August 6, 2014, BancInsure filed its motion for temporary stay. It relied in doing so upon an August 1, 2014 Oklahoma state court "Order Directing Insurer to Show Cause and Allowing Injunctive Relief. (The "Oklahoma Order.") The Oklahoma Order required Red Rock Insurance Company (the new name of the company formerly known as BancInsure)[1] to show cause why the court should not grant the Oklahoma Insurance Commissioner's request that BancInsure be placed into receivership and its assets liquidated. Among other things, the Oklahoma Order recites that (a) the Commissioner has alleged that BancInsure is insolvent and impaired; (b) an Order of Supervision was entered on May 19, 2014; and (c) an Agreed Order of Conservatorship was entered on July 1, 2014. (BancInsure's Motion, Ex. 1 (Dkt. 152-1.)) The show cause hearing is set for August 21, 2014. (*Id.*)

In its pending Motion before this Court, BancInsure relies upon this language of the Oklahoma Order to argue that this Idaho case should come to a halt:

> [BancInsure], its officers, directors, stockholders, members, subscribers, agents, and all other persons are hereby enjoined and prohibited from wasting and disposing of [BancInsure's] assets

---

[1] For ease, the Court will refer to this party as BancInsure.

**MEMORANDUM DECISION AND ORDER - 2**

> until further order of the Court; that all persons and entities are
> enjoined and prohibited from interfering with the Insurance
> Commissioner or these proceedings; that all persons and entities
> are enjoined and prohibited from wasting the assets of
> [BancInsure], commencing or prosecuting any actions against
> [BancInsure], obtaining any preferences, judgments, attachments,
> or other liens against [BancInsure], or making of any levy against
> [BancInsure] or its assets or any part thereof.

*Id*.

At this time, BancInsure seeks a temporary stay through August 21, 2014, the date of the hearing in the Oklahoma court. It would seem, however, that the writing is upon the wall for the future of BancInsure, as the documents submitted to the Oklahoma Court (as also placed in this record) evidence an insurance company in both acute and chronic financial distress, having already been subject to regulatory orders intended to provide an opportunity to restore its financial moorings, but which apparently have not been successful in their goal. Accordingly, the Court presumes for these purposes that it is more likely than not that the Oklahoma state court will enter a similar or more expansive order following the August 21, 2014 show cause hearing, and that BancInsure will again move to stay or otherwise bring this case to a halt. This Order anticipates the filing of such a motion, in part because the motion to stay has been filed a few short weeks before the trial date and on the eve of a number of deadlines related to the trial date. Hence, the reasoning set out here will likely be applied to any subsequent motion of the same nature, although the Court is aware that there may be intervening factual or other developments which might affect any decision on a subsequent motion.

## ANALYSIS AND HOLDINGS

A court may stay proceedings pursuant to a power that is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time

**MEMORANDUM DECISION AND ORDER - 3**

and effort for itself, for counsel, and for the litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A district court's decision to grant or deny a stay is a matter of discretion. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003). A stay should not be granted "unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Inc.*, 593 F.2d 857, 864 (9th Cir. 1979).

In deciding whether to grant a stay the court must weigh the competing interests of the parties, considering in particular: (1) the possible damage that may result from grant of a stay, (2) the hardship or inequity a party may suffer in being required to go forward with the case, and (3) the orderly course of justice. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). The burden on the party seeking a stay is reduced when the opposing party will not incur any cognizable damage from the stay. *Lockyer v. Migrant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

**1.      Uniform Insurance Liquidation Act**

In one of the rare exceptions to the federal bankruptcy statutory scheme, the process by which insolvent insurance companies are liquidated, and claims against them are handled, remains a matter of state law. Nonetheless, there has been considerable effort for many decades to make that process as uniform as possible because of the fact that most insurance companies, regardless of where domiciled, write policies and conduct business in many states. That effort has led to the creation of the Uniform Insurance Liquidation Act ("UILA"), which both Idaho and Oklahoma (and numerous other states) have adopted. Under the UILA, Idaho and

Oklahoma are considered "reciprocal states." The import of that status, at least under Idaho law, is that:

> In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state, or with the domiciliary liquidator. Claims must be filed on or before the last date fixed for the filing of claims in the domiciliary liquidation proceeding.

I.C. 41-3356.[2]

BancInsure contends that various doctrines require this Court to stand down from further proceedings once a liquidation proceeding begins in a sister UILA state. The Court will consider those arguments, in turn.

## 2. Full Faith and Credit and Abstention

State-federal full faith and credit obligations apply to the enforcement of judgments. Primarily, full faith and credit requires that "a final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter *and* persons governed by the judgment, qualifies for recognition through the land." *Baker ex rel. Thomas v. General Motors Corp.*, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (emphasis added).

BancInsure asserts that the principles of full faith and credit support the entry of a stay of this action, and that the Court should abstain from conducting further proceedings in the case. Idaho Trust responds that there is no need for this Court to "abstain" and that the doctrine of abstention only applies in limited circumstances that are not applicable here. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996) (noting that when there are difficult questions of

---

[2] Oklahoma has an analogous statute found at 36 O.S. § 1916.

**MEMORANDUM DECISION AND ORDER - 5**

state law or where federal review would be disruptive to state efforts to establish coherent policy on matters of substantial public concern, abstention may be appropriate). As all that is left is to determine the extent of Idaho Trust's damages, if any, Idaho Trust argues there is no need to stay the proceedings in this case, particularly on the eve of trial.

This is not a case which implicates full faith and credit concerns. The Oklahoma receivership case is only nascent at this moment. Even if it moves forward, as would be expected given the information submitted in this record regarding that case, there is nothing in the nature of a judgment in place at this time. Further, as described in a directly relevant Ninth Circuit decision, full faith and credit does not apply to *in personam* cases such as this, where the plaintiff in a pre-existing federal court action in Idaho brought against the insurance company was never a party to the insurer's Oklahoma liquidation proceedings, and Oklahoma had no personal jurisdiction over the plaintiff. Therefore, the long-standing rule that "state courts are completely without power to restrain federal-court proceedings in *in personam* actions" is fully applicable to this Idaho diversity case. *See Hawthorne Savings F.S.B. v. Reliance Insurance Company of Illinois*, 421 F.3d 835, 851 (9th Cir. 2005) (citing *Donovan v. City of Dallas*, 377 U.S. 408, 412-13, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964)).

Neither is this a case where abstention, as that doctrine independently exists under federal common law, is appropriate. Federal diversity jurisdiction is a right of federal law, available to any party who seeks and qualifies to invoke such jurisdiction in the otherwise limited field of federal court jurisdiction. Further, a federal district court has a duty to consider and adjudicate any controversy that is properly before it, and this case is such a controversy. *Id.*, p. 845 (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d

1 (1996)).

In certain narrow circumstances, such as where the controversy might implicate and possibly interfere with a regulatory process involving particular state law expertise, it may be nonetheless appropriate for a federal court to abstain from exercising its otherwise proper jurisdictional authority to decide a case. Such was the circumstance of *Burford v. Sun Oil Co*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in which the dispute implicated details of the Texas state oil drilling permit process. However, our Circuit has made plain in two decisions that such abstention is the rare breed indeed, and in this case – where the remaining issue to be decided is only the amount, if any, that BancInsure may owe to Idaho Trust – it cannot be said that Oklahoma's regulatory scheme of handling insolvent domestic insurance companies is threatened in any way. Adjudication of the remaining issue in this lawsuit "will not entail any more *federal* intrusion into state policy or *federal* disruption of a state regulatory scheme than in any other diversity case." *Hawthorne Savings*, 421 F.3d at 848 (emphasis in original). *See also Tucker v. First Md. Sav. & Loan*, 942 F.2d 1401 (9th Cir. 1991).

**3.     Comity**

Under the principles of comity, "federal courts of equity should exercise their discretionary power with proper consideration for the independence of state government in carrying out its governmental functions. However, comity is a doctrine of discretionary abstention." *City & County of San Francisco v. Assessment Appeals Board for the City and County of San Francisco, No. 1*, 122 F.3d 1274, 1277 (9th Cir. 1997). The Supreme Court has held that "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court."

**MEMORANDUM DECISION AND ORDER - 7**

*Town of Lockport v. Citizens for Community Action at Local Level, Inc.*, 430 U.S. 259, 264 n.8, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1997).

The question in unmistakably one of discretion for the Court, and as is often the case when the appropriate use of that discretion is so earnestly disputed as by the parties here, there are countervailing arguments of some strength on both sides of the equation. Of significance here is that the Ninth Circuit panel in the *Hawthorne* saw no compelling reason to suspend or stop entirely the proceedings in the underlying trial court case. "'Under principles of comity,'" the court said, "'federal courts of equity should exercise their discretionary power with proper consideration for the independence of state government in carrying out its governmental functions.'" *Id.* at 852 (quoting *City & County of San Francisco v. Assessment Appeals Bd. for the City & County of San Francisco, No. 1*, 122 F.3d 1274, 1277 (9th Cir. 1997)). In cases such as *Hawthorne*, the Circuit said that comity did not call for the federal court to step aside:

> Assuming, however, that we could create some new free-floating, comity-based abstention doctrine for cases of this ilk, it could not apply in this case. As the Supreme Court has made clear, "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." *Town of Lockport v. Citizens for Cmty. Action at the Local Level, Inc.*, 430 U.S. 259, 264, n. 8, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977). Here, the federal action was already pending at the time the rehabilitation and liquidation orders were filed. The district court therefore did not violate principles of comity by continuing to exercise jurisdiction over this suit.

*Id.* at 852.

This lawsuit is of some aged vintage as well, and there is the further fact that it was BancInsure, not Idaho Trust, that invoked the diversity jurisdiction of this Court. In addition, only a small peninsula of the case remains to be decided in the form of damages. Although that

issue, obviously, is of penultimate importance to the parties, its resolution in a trial in this court does not, as previously discussed, interfere with Oklahoma's ability to proceed with the insolvency and receivership proceedings involving BancInsure.

Indeed, any verdict from the trial in favor of Idaho Trust would serve to make more certain the terms of a claim that Idaho Trust might then make in the Oklahoma liquidation proceedings, arguably making the Oklahoma proceedings more streamlined. The Court is also mindful of the potential abyss of delay that may well attend the Oklahoma liquidation proceedings, a circumstance which one federal court has warned may have the practical "equivalent of imposing a permanent injunction" if a stay were to be granted. *See Wallis v. Centennial Insurance Company*, 2012 WL 292982, * 3 (E.D. Cal. Jan. 31, 2012).

However, allowing this case to go to trial (with the possibility of a verdict and subsequent judgment in favor of Idaho Trust) also may have the practical result of putting Idaho Trust into a better position than other potential claimants might have in the face of the stay order from the Oklahoma state court. Keeping in mind the constrained role of the federal district court sitting in diversity to apply state law, the possibility of some more advantaged status for Idaho Trust gives the Court pause, and compels a closer examination of what factors come into play in such a circumstance when gauging whether principles of comity should, or should not, lead to a stay of the proceedings in this case. The Court has considered the analogy of the bankruptcy court system, in which – if BancInsure was subject to the federal bankruptcy laws as an insolvent debtor and had filed for bankruptcy protection (or been placed into bankruptcy proceedings) – this case would have been subject to an automatic stay, only to proceed if the federal bankruptcy court granted relief from that stay. The Court has considered the cases put forward by

**MEMORANDUM DECISION AND ORDER - 9**

BancInsure, in which other federal circuit courts and other district courts within the Ninth Circuit, have concluded on similar facts that considerations of comity call for a federal court to defer from further proceedings in favor of state insolvency and receivership proceedings.[3]

After such a careful review, including in particular the thoughtful decisions of both Judge Shubb in the *Wallis* decision mentioned above (declining to issue a stay), and Judge Ishii in *American Alternative Insurance Corporation v. American Protection Insurance Company*, 2013 WL 1281939 (E.D. Cal. March 25, 2013) (granting a motion to stay based on comity grounds), the Court is ultimately persuaded that the principles of comity, as they would be applied by an Idaho state court to this case, require the granting of BancInsure's motion.

In making that decision, the Court is most persuaded by the purpose and structure of the Uniform Insurance Liquidation Act, which is to create a uniform and standardized process for the orderly handling, consideration, and disposition of claims made upon the assets of an insurance company. Those proceedings, under the Act, are ordinarily carried out in the state of the insurance companies' home domicile, although there is provision for ancillary receivers to be appointed in other locales when the nature and number of the claims made against the *in rem* corpus of what was once the insurance company might so justify. The UILA permits, and even anticipates, that all other proceedings in the nature of claims against the company will be stayed,

---

[3] The Court has also considered the arguments made by BancInsure that *Hawthorne Savings* was wrongly decided, as evidenced by various rulings of California appellate courts which have called upon California courts to defer from handling claims against insurance companies that are the subject of liquidation proceedings in other UILA states. The Court is not persuaded that *Hawthorne Savings* is wrongly decided, and unless and until its pertinent holdings are undone, the case remains binding precedent for this trial court. Nonetheless, the pertinent portion of that decision as it pertains to the issue of comity is the holding of the *Hawthorne Savings* panel that such a decision is a discretionary one. That portion of the decision is not disputed by either party here.

**MEMORANDUM DECISION AND ORDER - 10**

and resolved instead in the liquidation process – assuming that they arise in other states which are also signatories to the UILA.

Such circumstances are, in fact, directly analogous to bankruptcy cases and in one such instance, an Idaho appellate court stated explicitly that principles of comity call on the Idaho courts to put their cases in abeyance:

> The proper inquiry is whether the state court or the bankruptcy court is the better forum for deciding a question, arising under federal law, which may affect the scope of a stay order issued by the bankruptcy court....*Considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction of such an action and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there.*

*Lindsey v. Cornell*, 650 P.2d 704, 706 (Idaho Ct. App. 1982) (emphasis added) (vacating a state trial court judgment against a debtor who had filed for bankruptcy, obtained in proceedings that went forward after entry of a stay issued by the bankruptcy court).

The parties have not supplied, nor has the Court been able to glean from its own research, any directly apposite Idaho case law to the facts of this case. However, the *Lindsey* decision referenced above is an insight into closely analogous facts. In addition, the Court has reviewed court orders sought and obtained by the Director of the Idaho Department of Insurance, available for public review on the Department's website. The Court reviewed such orders to see what similar language, if any, has been used by the Director in liquidation and insolvency orders issued in Idaho UILA liquidation cases. One such order of liquidation, entered in the case of *State of Idaho, ex rel. Smith, Director of the Idaho Department of Insurance v. Twin Falls Mutual Insurance Company*, Case No. CV OC 0501668, entered by then state district judge, now Supreme Court Justice, Joel Horton, contains this pertinent language:

**MEMORANDUM DECISION AND ORDER - 11**

<pre>           *       *       *</pre>

10. The Liquidator [the Director of the Department of Insurance] has the power and authority pursuant to Chapter 33, Title 41, Idaho Code [the UILA]to liquidate TFMIC under the general supervision and exclusive jurisdiction of this Court.

<pre>           *       *       *</pre>

18. All persons are enjoined from asserting or maintaining any future or existing action at law, equity or in arbitration against TFMIC or its assets or the Liquidator, whether in this state or outside this state.

<pre>           *       *       *</pre>

20. Except by leave of this Court, during the pendency of the liquidation, TFMIC and all customers, policyholders, principals, investors, creditors, lessors, and other persons (except for the Liquidator) seeking to establish or enforce any claim, right or interest against or on behalf of TFMIC, and all others acting for or on behalf of such persons including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies and their respective attorneys, servants, agents, and employees, are enjoined from (a) Commencing, prosecuting, continuing or enforcing any claim suit or proceedings involving TFMIC or against any of its assets except that this Order does not enjoin the filing of any claim pursuant to § 41-3335, Idaho Code; (b) Commencing, prosecuting, continuing or enforcing any suit or proceeding in the name of or on behalf of TFMIC; (c) Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any property of TFMIC, or attempting to foreclose, forfeit, alter or terminate any interest of TFMIC in any of its property or assets whether such acts pare part of a judicial proceeding or otherwise; (d) Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of, or interfering with, or creating, or enforcing a lien upon, any property or asset of TFMIC's estate wherever located, owned by or in the possession of TFMIC or the Liquidator appointed pursuant to this Order or any agents appointed by the Liquidator; and (e) Doing any act or thing whatsoever to interfere with the taking control of, possession or management by the Liquidator of the

> property of TRMIC's estate or subject to this Liquidation,
> or to in any way interfere with the the Liquidator, or to
> interfere, in any manner, with the exclusive jurisdiction of
> this Court over the property and assets of TFMIC's estate
> subject to this Liquidation.

*Available at*: http://www.doi.idaho.gov/Press/1713.pdf.

The Court is left, then, to consider the question of comity under the entirety of these circumstances: (a) the fact of the Idaho Legislature's decision to adopt the UILA (that was a deliberate choice, after all, as Idaho was not required to do so); (b) the use of similar "stay" language (with even more expansive language than found in the Oklahoma state court order) by the state agency charged with the regulation of insurance companies in Idaho and by which the Idaho Department of Insurance asserts stem-to-stern control and jurisdiction over any and all claims against the estate of a liquidating insurance company; and, (c) a decision of the Idaho appellate courts upon the use of principles of comity in analogous circumstances of competing jurisdiction. After doing so, this Court is persuaded, even if somewhat reluctantly, that principles of comity would lead an Idaho court, applying Idaho law on the facts of this case, to grant BancInsure's motion to stay.

Such a result is consistent with the Idaho Legislature's decision in adopting the UILA, is consistent with the deference shown by Idaho state courts in dealing with claims of competing jurisdiction from tribunals in other states (or, the bankruptcy courts) which share the same public policy goals, and such a result does not deprive Idaho Trust of a remedy. Stopping this case at this particular point does run against the grain of the Court's ordinary preference to move the case to a finish point, and is no doubt frustrating to Idaho Trust. However, on balance, for the reasons expressed in this decision, it is the appropriate discretionary decision of this Court.

# CONCLUSION

The Court concludes that the principles of comity, and Idaho common and statutory law, warrant the issuance of a temporary stay until August 21, 2014, the date of the hearing before the Oklahoma court. If BancInsure seeks a stay or other relief to preclude further proceedings in this case beyond that date, it must file another motion requesting such. Likewise, if BancInsure does *not* seek to extend the stay or obtain other relief, it shall file a notice indicating that decision with the Court, so that the Court can resume trial preparations.

# ORDER

**It is hereby ordered:**

1) Defendant BancInsure's Motion for Stay (Dkt. 152) is GRANTED. This case is stayed through August 21, 2014.

DATED: **August 15, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge